IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| EUGENE SWANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-01409 |
| ) | |
| US FOODS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff in this matter, Eugene Swann, alleges that he was discharged by his former employer, defendant US Foods, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and retaliated against for engaging in protected activity under the ADA and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* Defendant now moves for summary judgment on the grounds that the undisputed summary judgment record demonstrates:

(i) that plaintiff has failed to show that he is disabled within the meaning of the ADA and therefore has not established a *prima facie* case of ADA discrimination;

(ii) that plaintiff has not shown that he suffers a serious health condition within the meaning of the FMLA and thus cannot state a *prima facie* case of FMLA retaliation;

(iii) that plaintiff has not shown the requisite causal connection between his protected activity and the adverse employment action he suffered and thus has not established a *prima facie* case of ADA retaliation; and

>   (iv) that defendant has asserted a legitimate, nondiscriminatory reason for plaintiff's discharge and plaintiff has failed to show that this reason is pretextual.[1]

For the reasons set forth below, defendant's motion for summary judgment must be granted.

## I.

The summary judgment record reflects the following facts. Plaintiff was a full-time employee of US Foods from June 1996 to November 2012. (Pl.'s Aff. 1–2). He worked as a delivery truck driver primarily out of defendant's Manassas, Virginia depot. (*Id.*). In 2008, Plaintiff took three months of FMLA leave to recuperate from surgery on his right leg. (Pl. Dep. 48–49). On June 21, 2012, while working at a US Foods location in Hagerstown, Maryland, plaintiff injured his right wrist/hand, causing "pain [to] shoot[] up into his shoulder[] and numbness to the right hand." (*Id.* ¶ 14). Plaintiff reported the injury to his supervisor, who allegedly told him that he was needed at work that night. (*Id.*). Plaintiff continued to work but experienced numbness in his right hand.

Six days later, on June 27, 2012, while unloading at Mercy Hospital in Baltimore, plaintiff again experienced severe pain in his right arm. (*Id.* ¶ 15). He was treated at Mercy Hospital and released. (Pl.'s Aff. 3). Upon returning to work in Manassas, defendant's Human Resources Coordinator, Pamela Ayers, advised plaintiff to visit a US Foods-approved clinic for an evaluation. (*Id.* at 4). Plaintiff did so, and had an appointment with Dr. John Biddulph, an orthopedist, that same day. (*Id.* 6–8). After examining plaintiff, Dr. Biddulph concluded that plaintiff could continue to drive and work, but placed him on light duty with a 25-pound lifting restriction. (*Id.* at 8). Ayers was informed of this light duty work requirement and had plaintiff

---

[1] Plaintiff conceded that summary judgment should be granted as to the Title VII discrimination claim. Accordingly, there will be no analysis of that issue.

2

sign a Transitional Work Agreement ("TWA") to that effect. (Pl.'s Dep. 85). By signing the TWA, Plaintiff agreed that it his was responsibility to maintain his "limited duty status" and that he should notify a supervisor if he was asked to perform a task outside of those restrictions. (*Id.* at Ex. 14). While on light duty, plaintiff only did light duty work and does not remember anyone asking him to do work beyond his restrictions. (*Id.* at 211).

Dr. Biddulph released plaintiff back to full duty work on July 16, 2012. (*Id.* at 77). Plaintiff's wrist injury did not cause him to miss any time at work. (*Id.* at 55). The only time plaintiff missed work following the injury was from July 27, 2012 to mid-August 2012 when plaintiff took a vacation to the Bahamas that had been planned prior to his June 2012 injury. (*Id.* at 94–95).

Plaintiff filed for workers' compensation benefits in connection with his June 2012 injury. (Pl.'s Dep. 137, 161). When an employee files for workers' compensation, it is US Foods' policy to schedule appointments for them with doctors the employees select from panels provided by a third party administrator. (Ayers Dep. 4–6, 20). Logistical challenges caused plaintiff to miss a few doctor's appointments, but he was ultimately able to see Dr. Michael Cohen, a neurologist, on September 20, 2012. (Pl.'s Dep. 90–94, 206).

On the morning of October 26, 2012, plaintiff and another US Foods driver, Al-Sayid Abdullah, were involved in a confrontation while at the Manassas division yard. (Pillion Dep. 7–87). The parties dispute the nature and details of this "altercation."[2] Defendant contends that Swann and Abdullah exchanged words and were "physically separated" by their supervisor, Mr. Butym. (*See* Deft.'s SOF ¶¶ 27–33). Plaintiff contends that Mr. Butym simply stepped in the physical space between Swann and Abdullah and did not need to touch or restrain them

---

[2] Plaintiff disputes even the use of the word "altercation" to describe the events of October 26, 2012.

3

physically. (Swann Aff. ¶¶ 40, 41). Although plaintiff contends that he did not actually issue any threats aloud to Abdullah, at the time he told investigators that he told Abdullah, "[I]f you want to get it on you can come out of the gate and we can—you can do what you want to do or we can get it on." (Pl.'s Dep. Ex. 20). Nevertheless, the *material* fact that some sort of disagreement or confrontation occurred between Abdullah and Swann is undisputed. After an investigation by US Foods leadership, the company determined that both plaintiff and Abdullah violated its policy against workplace violence and both were discharged on November 1, 2012. (Rutherford Dep. 11–12, 62–63).

Plaintiff alleges that his termination was inconsistent with the manner in which defendant had previously punished alleged workplace violence issues. He points to two comparators: Kelvin Howard and Bruce Hommel. (Def.'s Opp'n at 25–26). Howard was suspended after a confrontation with Hommel over who would drive a preferred delivery route. (Howard Dep. 18, 20; Pl. Dep. 194–95; Pillion Ex. 1, 99:16–101:8). Howard was disciplined a second time for a verbal altercation with a customer at Ledo's Pizza. (Howard Dep. Ex. 2, at 48:4–13). Again, Howard was not terminated but was banned from driving the route that included Ledo's Pizza. The record does not disclose when these events occurred, but, at oral argument, plaintiff's counsel represented that these incidents occurred "five-to-ten years ago."

## II.

Under Rule 56, Fed. R. Civ. P., defendant is entitled to summary judgment if the undisputed facts show that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law. On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). In this regard, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting Anderson, 477 U.S. at 247–48). A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Furthermore, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In other words, to survive summary judgment on an issue, the nonmoving party, with the burden of proof on that issue, must submit competent record evidence sufficient to carry the non-moving party's burden on that issue and allow a reasonable jury to find for the non-moving party. *See Anderson*, 477 U.S. at 252.

## III.

To establish a *prima facie* ADA disability discrimination claim, plaintiff must first show that "[he] is disabled within the meaning of the Act." *Pollard v. High's of Balt., Inc.*, 281 F.3d 462, 467 (4th Cir. 2002). The ADA defines "disability" as: (i) a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (ii) a record of such an impairment, or (iii) being regarded as having such an impairment. 42 U.S.C. § 12102(2). A plaintiff may be regarded as disabled under the ADA if either "(1) a covered entity mistakenly believes that [he] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 703 (4th Cir. 2001). An employer regards an employee as substantially limited in his ability to work if the employer perceives him "to be significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 303 (4th Cir. 1998). Moreover, "[t]he fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action.'" *Haulbrook*, 252 F.3d at 703 (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996)).

Plaintiff claims that he has two impairments that are disabilities under the ADA: (i) an impairment to one of his legs and (ii) his June 2012 injury. Nevertheless, the summary judgment record does not show that these injuries constitute disabilities within the meaning of the ADA.

a. <u>Plaintiff's Leg Injury</u>

Plaintiff contends that he has a "disabling condition" that is associated with a prior injury to his right leg, an ailment he has suffered since childhood and for which he had surgery on in

2008. (Pl. Dep. 48–49). After the 2008 surgery, he received three months of FMLA leave to recuperate. (*Id.*). Importantly, the record does not reflect that this injury substantially limits plaintiff's ability to walk or work; instead, the record reflects only that the injury causes him to walk with a "noticeable limp." (Pl. Dep. 224). Although walking is a major life activity,[3] courts have held that an injury that only moderately affects one's ability to walk, absent additional evidence, is not a substantial limitation on the major life activity of walking.[4] Thus, the weight of authority makes clear that this leg injury, which simply causes plaintiff to walk with a limp, is not a disability under the ADA. Accordingly, the summary judgment record does not disclose

---

[3] 42 U.S.C. § 12102(2)(A); *Young v. United Parcel Serv.*, 707 F.3d 437 (4th Cir. 2013), *amended and superseded by* No. 11-2078, 2015 WL 1600406, at *4 (4th Cir. Apr. 10, 2015).

[4] *See, e.g., Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 686 (8th Cir. 2003) (plaintiff's ability to walk was not substantially limited where he could not walk longer than one-quarter of one mile without resting); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (limping due to unequal length of legs did not substantially limit major life activity as "moderate difficulty experienced while walking does not rise to the level of a disability"); *Penny v. United Parcel Serv.*, 128 F.3d 408, 414–17 (6th Cir. 1997) (finding that "moderate difficulty or pain experienced while walking does not rise to the level of a disability"); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105–08 (3d Cir. 1996) (limping, slowly climbing stairs, and an inability to walk/jog for more than a mile are not examples of substantial limitations of the major life activity of walking because "comparatively moderate restrictions on the ability to walk are not disabilities"); *Fink v. Richmond*, No. DKC 2007-0714, 2009 WL 3216117, at *7 (D. Md. Sept. 29, 2009) ("Plaintiff's inability to walk at a fast pace constitutes a mere difference with the average person, not a considerable difference as required by the . . . ADA."); *Gallimore v. Newman Machine Co.*, 301 F. Supp. 2d 431, 449 (M.D.N.C. 2004) (plaintiff was not substantially limited in his ability to walk when he could walk half a mile without pain, walk for recreation, had no medical limitations on the distance he could walk, and was able to climb stairs without pain); *Stewart v. Weast*, 228 F. Supp. 2d 660, 662 (D. Md. 2002) ("[A]n inability to walk long distances or climb stairs does not in itself substantially limit the persons [sic] ability to walk within the meaning of the ADA."); *Muench v. Alliant Foodservice, Inc.*, 205 F. Supp. 2d 498 (D.S.C. 2002) (plaintiff with one leg shorter than the other not disabled under the ADA). *Cf. Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 327 (4th Cir. 2014) (reversing district court's grant of summary judgment to employer where plaintiff suffered significant leg injuries that required hospitalization and a wheelchair and doctors advised plaintiff that he likely would not be able to walk for seven months); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005) (finding there was a genuine issue of material fact with respect to whether a plaintiff was substantially impaired in his ability to walk in light of the fact that she could not walk more than one city block without feeling numbness in her feet and one of her legs that effectively prevented her from walking any further).

evidence that would allow a reasonable fact-finder to conclude that his prior leg injury is a disability under the ADA.

Second, the record evidence does not show that US Foods regarded plaintiff as being disabled based on his leg injury. To succeed on a claim that US Foods regarded him as being disabled, plaintiff must show that US Foods (i) "mistakenly believe[d] that [he] has a physical impairment that substantially limits one or more major life activities," or (ii) "mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 390 (4th Cir. 2001) (citations and internal quotation marks omitted). To determine whether a plaintiff has been "regarded as" disabled, courts must focus "on the reactions and perceptions of the employer's decisionmakers." *Young v. United Parcel Serv.*, 707 F.3d 437 (4th Cir. 2013), *amended and superseded by* No. 11-2078, 2015 WL 1600406, at *4 (4th Cir. Apr. 10, 2015) (quoting *Wilson v. Phoenix Specialty Mfg. Co.*, 513 F.3d 378, 385 (4th Cir. 2008) (internal quotation marks omitted)). Defendant identified the following individuals as the decisionmakers who decided to terminate plaintiff: Adrienne Christmas, H.R. Business Partner for the Atlantic Region; Rick Barrett, Division President for the Manassas Region; Maureen Weldon, then Compliance Manager; Dede Rutherford, Human Resources Manager for US Foods' Manassas Division; David Bunk, Vice President of Operations; Mike Pillion, Transportation Manager; and John Powers, Director of Safety and Security. (Doc. 58 at 8). Yet, plaintiff points to no evidence in the record of any decisionmaker's reaction to or perception of his leg injury that would lead to the conclusion that these decisionmakers regarded him as disabled. At best, the record shows that Rutherford, the Human Resources Manager, knew that plaintiff had previously injured his leg; there is no evidence in the

record showing that she knew what was wrong with his leg or thought that this injury substantially limited any of plaintiff's major life activities. (*See id.* at 21–22).

It is therefore clear that the record does not disclose any facts from which a reasonable fact-finder could conclude that decisionmakers at US Foods regarded plaintiff as disabled. Accordingly, plaintiff cannot establish a *prima facie* case of ADA discrimination based on his leg injury, and defendant's motion for summary judgment with respect to plaintiff's ADA discrimination must be granted.

b. Plaintiff's June 2012 Injury

Plaintiff's claim that his June 2012 wrist injury constitutes a disability under the ADA must also fail. First, the record evidence does not show that his wrist injury "substantially limits" a major life activity. Although working is a major life activity,[5] courts uniformly hold that being placed on light duty work as a result of an injury is insufficient as a matter of law to establish that the injury substantially affects the major life activity of working.[6] The doctors who examined plaintiff after his wrist injury recommended that he be placed on light duty for two weeks with a twenty-five pound lifting restriction and did not believe he needed to cease work altogether. (*See* Pl. Dep. Exs. 11–13, 17). Accordingly, plaintiff's June 2012 injury did not

---

[5] *See Gupton v. Virginia*, 14 F.3d 203, 205 (4th Cir. 1994) (citing 29 C.F.R. § 1613.702(c)).

[6] *See Williams v. Channel Master Satellite Sys.*, 101 F.3d 346, 349 (4th Cir. 1996) (per curiam) (citation omitted) (affirming summary judgment and holding "as a matter of law, that a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"), *abrogated on other grounds by Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999); *Lyons v. Shinseki*, 454 F. App'x 181, 183 (4th Cir. 2011) (unpublished) (affirming summary judgment on grounds that plaintiff did not have disability where "Lyons has failed to produce probative evidence that his inability to lift more than twenty-five pounds constitutes a substantial limitation"); *Settle v. S.W. Rodgers Co.*, 182 F.3d 909, No. 98-2312, at *3 (4th Cir. 1999) (unpublished) (affirming summary judgment and holding that plaintiff was not disabled when he was placed on light duty four weeks after his surgery and returned to full duty several weeks later).

substantially limit any major life activity and thus was not a qualifying disability under the ADA. *See supra* note 5.

Furthermore, the record evidence does not show that plaintiff's June 2012 injury and light duty assignment led US Foods decisionmakers to regard him as disabled. Although the summary judgment record shows that some decisionmakers knew that plaintiff was on light duty, "[t]he fact that an employer is aware of an employee's impairment, without more, is insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 703 (4th Cir. 2001). Those decisionmakers must have known of the injury *and* must have consequently regarded plaintiff has being substantially limited in a major life activity. There is no evidence in the record that US Foods decisionmakers regarded employees who required light duty assignments as substantially limited in their ability to work. In fact, at oral argument US Foods noted that approximately twenty-five percent of its employees were in light duty at any given time. Thus, given that several decisionmakers knew of plaintiff's injury and knew that he was able to perform light duty work for a two week period, and that those decisionmakers did not regard those on light duty as substantially limited in the major life activity of working, plaintiff has failed to establish that decisionmakers regarded him as having a physical impairment that substantially limited a major life activity.[7] *Cf. Cook v. State of R.I., Dept. of Mental Health, Retardation, & Hosps.*, 10 F.3d 17, 25 (1st Cir. 1993) (holding that employer regarded plaintiff as disabled where employer believed that plaintiff's impairment foreclosed broad range of employment options in relevant industry).

---

[7] Plaintiff's contention that he should have had more control over which doctors he consulted is unavailing, as the relevant inquiry focuses on whether the June 2012 injury is a qualifying disability under the ADA.

Accordingly, because plaintiff's June 2012 injury was not a disability within the meaning of the ADA and plaintiff cannot establish a *prima facie* case of ADA discrimination, defendant's motion for summary judgment as to plaintiff's ADA discrimination claim must be granted.

## IV.

Defendant next seeks summary judgment as to plaintiff's ADA retaliation claim. To establish a *prima facie* claim of ADA retaliation, plaintiff must show (i) that he engaged in protected conduct, (ii) that he suffered an adverse action, and (iii) that a causal link exists between the protected conduct and the adverse action. *See A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011). If plaintiff is able to establish a *prima facie* case, the burden then shifts to defendant, who must "rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298 (4th Cir. 2004). If defendant does so, plaintiff must demonstrate that the proffered reason is a pre-text for unlawful retaliation. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Defendant argues that the summary judgment record shows that plaintiff cannot establish a *prima facie* ADA retaliation claim because there is insufficient temporal proximity between his protected conduct, including requesting leave to go to the doctor and his request for light duty, and his termination.

As a threshold matter, it is assumed that plaintiff's alleged protected conduct—that is, requesting leave to go see his own doctor regarding his injury and the light duty request—is, in fact, protected conduct under the ADA. In fact, it is currently unclear in this circuit whether such conduct constitutes protected activity. *See Williams v. Brunswick County Bd. of Educ.*, 440 F. App'x 169, 172 (4th Cir. 2011) (unpublished) (assuming without deciding that a leave requested constituted protected conduct under the ADA); *Mercer v. Drohan Mgmt. Grp., Inc.*, No.

1:10CV1212, 2011 WL 5975234, at *7 (E.D. Va. Nov. 28, 2011) (finding that leave request of three weeks was not a protected activity when, among other things, the plaintiff did not believe she was disabled when she made the request and she was not regarded as disabled). In any event, assuming without deciding that plaintiff's conduct constitutes protected activity, plaintiff's retaliation claim nonetheless fails as the record makes clear that plaintiff has not established a causal link between this alleged protected activity and the adverse action plaintiff suffered.

Plaintiff requested leave and was placed on light duty on June 29, 2012. He returned to full duty on July 16, 2012. On November 1, 2012, following the altercation with Abdullah, plaintiff was discharged. Although proximity in time between protected action and an adverse employment action may establish a *prima facie* case of causality, defendant correctly contends that the approximately four month gap present here is too long, by itself, to establish the requisite causal link. This view finds support in the cases; courts have consistently held that a period of three or four months between protected activity and adverse employment action is insufficient to establish a causal link between the two.[8] Accordingly, the four-month gap between the time of plaintiff's alleged protected activity and plaintiff's termination is not sufficient in and of itself to establish a causal link to make out a *prima facie* case of retaliation.

---

[8] *See, e.g., Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992) (four-month period insufficient)) (explaining that, for purposes of a retaliation claim, temporal proximity must be "very close"); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding a gap of two months "sufficiently long so as to weaken significantly the inference of causation between the two events"); *see also, e.g., Atkins v. Holder*, 529 F. App'x 318, 321 (4th Cir. 2013) (unpublished) (holding that termination four months after protected activity was "not temporally very close to [the] protected activity"); *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (unpublished) ("a three-month lapse is too long to establish causation, without more"); *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (per curiam) (unpublished) (holding that "three to four months . . . is too long to establish a causal connection by temporal proximity alone").

Nevertheless, even when "temporal proximity between protected activity and alleged retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus," including, for instance, evidence of recurring retaliatory animus during the intervening period. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (citation and internal quotation marks omitted) (observing that when the lapse between the two events is too great to establish causality based on temporal proximity, plaintiff must present other relevant evidence to establish causation); *see also Miles v. Dell, Inc.*, 429 F.3d 480 (4th Cir. 2005) (same). The *Lettieri* case provides an instructive example of this principle. There, the Fourth Circuit held that the plaintiff established the causation element of a *prima facie* case of Title VII retaliation when she was stripped of her significant job responsibilities one month after the decisionmakers were made aware of her complaint.[9] 478 F.3d at 650–51. Here, by contrast, plaintiff can point to no similar acts demonstrating US Foods' retaliatory animus in the intervening months. In fact, the record actually shows the opposite: plaintiff testified that while on light duty he could not recall a *single instance* where he was asked to do work that went beyond his light duty limitations. (*See* Pl. Dep. 78, 87–89, 211); *cf. Fox v. Gen. Motors Corp.*, 247 F.3d 169, 173 (4th Cir. 2001). Moreover, plaintiff identified no evidence in the record of any comments or spiteful conduct by the decisionmakers towards him. Therefore, given the absence in this record temporal proximity between plaintiff's protected activity and in the absence of any record evidence of other instances of retaliatory animus, it is clear that plaintiff is unable show the requisite causal link between his allegedly protected conduct and the adverse action he

---

[9] Although *Lettieri* involved a Title VII retaliation claim, it is nonetheless instructive as courts have routinely used Title VII precedent in ADA cases. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001).

suffered. Accordingly, plaintiff failed to establish a *prima facie* case of ADA retaliation and defendant's motion for summary judgment on this claim must be granted.

## V.

Finally, defendant moves for summary judgment on the ground that plaintiff cannot establish a *prima facie* case of FMLA retaliation as plaintiff did not have a serious health condition as defined by the FMLA. In order to establish a *prima facie* FMLA retaliation claim, plaintiff must show "[i] that he engaged in protected activity, [ii] that the employer took adverse action against him, and [iii] that the adverse action was causally connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). But, importantly, to constitute protected activity under the FMLA, plaintiff must exercise or attempt exercise his rights under the FMLA; that is, plaintiff must be "afflicted with an 'FMLA-qualifying condition'—that is, a 'serious health condition,'" which this plaintiff has not shown and cannot show. *Adams v. Wallenstein*, 814 F. Supp. 2d 516, 524–25 (D. Md. 2011) (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 385 (4th Cir. 2001)); *see also McPhail v. Sonoco Prods. Co.*, No. 4:11–cv–02417–RBH, 2013 WL 4067925, at *7 (D.S.C. Aug. 12, 2013) (granting summary judgment on FMLA retaliation claim because the plaintiff's "gastroenteritis does not qualify as a 'serious health condition' as defined under the FMLA" and this requirement "falls squarely within the protected activity requirement").

Plaintiff cannot establish that he suffered a "serious health condition" within the meaning of the FMLA. A "serious health condition" is defined as "an illness, injury, impairment or physical or mental condition that involves inpatient care . . . or continuing treatment by a health care provider." 29 C.F.R. § 825.113. First, the record discloses no evidence that plaintiff received any inpatient care or suffered a period of incapacitation for his June 2012 injury.

Further, plaintiff's injury did not necessitate a period of absence for multiple treatments related to "restorative surgery" or "[a] condition that would likely result in a period of incapacity." *Id.* In fact, not *one single* doctor who examined him regarding the June 2012 injury characterized him as incapacitated. To the contrary, plaintiff was placed on light duty and continued to work subject to a lifting restriction.[10] (Pl. Dep. 76–77). Second, plaintiff failed to prove that he was under continuing treatment by a health care provider for his June 2012 injury. To qualify as "[a] serious health condition involving continuing treatment by a health care provider," plaintiff must have been incapacitated. 29 C.F.R. § 825.115. "Incapacitation" under the FMLA refers to an "inability to work, attend school or perform other regular daily activities due to a serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b). *See, e.g., Taylor v. Autozoners, LLC*, 70g6 F. Supp. 2d 843, 850 (W.D. Tenn. 2010) ("Incapacitation for the purposes of the FMLA does not mean that, in the employee's own judgment, he or she should not work, or even that it was uncomfortable or inconvenient for the employee to have to work.") (internal quotation marks omitted)). Given that plaintiff was able to continue to work subject only to a light duty designation, he clearly does not meet this standard.

Given these facts, it is clear that plaintiff did not suffer from a serious health condition under the FMLA. Accordingly, plaintiff has failed to state a *prima facie* case of FMLA retaliation and defendant's motion for summary judgment on this ground must be granted.

## VI.

There is an alternative basis for granting summary judgment as to each of plaintiff's three remaining claims. Specifically, defendant is entitled to summary judgment because it offered a

---

[10] Plaintiff received FMLA leave for his 2008 surgery on his leg. Plaintiff does not base his FMLA retaliation claim on that leave request. Moreover, even if he did, the fact that it happened six years before his termination shows that it was not causally connected to his discharge.

15

legitimate nondiscriminatory reason for plaintiff's discharge that plaintiff cannot show is pretextual. Once a plaintiff establishes a *prima facie* case of ADA discrimination, ADA retaliation, or FMLA retaliation, defendant may then "rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298 (4th Cir. 2004). If defendant does so, plaintiff must demonstrate that the proffered reason is a pre-text for unlawful retaliation. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Thus, even assuming *arguendo* that plaintiff had established a *prima facie* case of ADA discrimination, ADA retaliation, or FMLA retaliation, defendant would still be entitled to summary judgment if plaintiff cannot point to record evidence showing that there is a triable issue of fact to show that defendant's nondiscriminatory explanation for plaintiff's discharge was pretextual.

Defendant contends that the verbal altercation on October 26, 2012 between plaintiff and his coworker, Abdullah, was a violation of defendant's zero-tolerance policy towards workplace violence and that this constitutes a legitimate non-discriminatory reason for discharge. Although plaintiff disputes defendant's characterization of the event as an "altercation," denies exhibiting any physical behavior towards Abdullah or anyone else, and denies threatening Abdullah, *see* Doc. 71 at 11–14, plaintiff does not—and cannot—dispute that he was involved in a verbal altercation with Abdullah and that he "expressed exception to Abdullah's seeming name-calling." (*Id.* at 11). Furthermore, although plaintiff contends that the incident should not have been treated as one involving workplace violence, plaintiff cannot dispute that the ultimate decisionmakers at US Foods did, in fact, treat it as such. Moreoever, the fact that Abdullah, who does not have a history of health complaints, was *also* terminated on November 1, 2012 further support's defendant's contention that plaintiff was terminated for violating company policy

rather than due to discriminatory animus. Accordingly, the record contains sufficient facts that would allow a reasonable fact finder to conclude that US Foods discharged plaintiff for the legitimate, nondiscriminatory reason that he had been involved in an altercation with a coworker.

Plaintiff nevertheless attempts to show that this legitimate, nondiscriminatory reason is pretextual by identifying other instances where alleged workplace violence occurred without the employee involved being discharged. Although a comparison will never involve "precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances,"[11] ultimately, "the similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). In this case, however, the record shows that these supposed comparators, Kevin Howard and Bruce Hommel, are not similarly situated with plaintiff both because these incidents are too remote in time to be comparable and because defendants' company policy changed in the intervening years. At oral argument, plaintiff's counsel noted that the incidents involving Howard and Hommel occurred "five-to-ten years ago." Even if these employees' conduct is similar to plaintiff's, they cannot be treated as comparators for purposes of pretext because "employees ... who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated." *Lee v. Kansas City So. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009).[12]

---

[11] *Yoon v. Sibelius*, 481 F. App'x 848, 850 (4th Cir. 2012) (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)).

[12] *See also Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, 515–16 (6th Cir. 2012) (finding an alleged comparable incident that occurred almost three years before the plaintiff's incident too temporally remote to be a comparator); *Hurst v. District of Columbia*, No. 12-2537, 2015 WL 1268173, at *7 (D. Md. Mar. 16, 2015) (finding conduct which occurred more than five years before plaintiff's was "too temporally remote to support an inference of discrimination"); *Epps v. First Energy Nuclear Operating Co.*, No. 11-462, 2013 WL 1216858,

Furthermore, plaintiff's counsel could not say whether the decisionmakers who chose not to terminate either Howard or Hommel then were the same as those who decided to terminate plaintiff and Abdullah, besides the Transporation Manager, Mr. Pillion.[13] Additionally, Howard and Hommel are not similarly situated with plaintiff because US Foods implemented a new workplace violence policy in 2011. (Rutherford Dep. 136–38).[14] Thus, because the Howard/Hommel incidents are too temporally remote from plaintiff's altercation with Abdullah and because the company's decisionmakers and workplace violence policy changed in the interim, plaintiff fails to produce comparators to show that defendant's proffered legitimate, nondiscriminatory reason was pretextual.[15] Accordingly, defendant is entitled to summary judgment on plaintiff's ADA discrimination claim, ADA retaliation claim, and FMLA retaliation claim.

---

at *19 (W.D. Pa. Mar. 25, 2013) (finding incident which occurred more than four and a half years before plaintiff's too remote to raise inference of discrimination).

[13] From her deposition testimony, it is clear that Ms. Rutherford was not yet working in the Manassas office at the time of the Hummel/Howard incident. *See* Rutherford, Ex. 3 at 125:10–16.

[14] Plaintiff contends that nothing changed about the policy in those intervening years, pointing to the deposition testimony of the Transportation Manager, Mr. Pillion. *See* Pillion, Ex. 1 at 98:6–22. Furthermore, he argues that Abdullah had a history of aggravation with customers prior to the incident in question here, and if there had truly been a "heightened awareness" of the workplace violence policy, Abdullah would have been disciplined prior to this incident. *See* Pl.'s Opposition Br. at 4. Nevertheless, these arguments are directed at the implementation of the policy, and plaintiff is unable to show a *similarly situated* comparator after US Foods' renewed and strengthened commitment to its workplace violence policy.

[15] *See, e.g., Laing v. Fed. Express Corp.*, 703 F. 3d 713, 721 (4th Cir. 2013) (affirming summary judgment where plaintiff failed to identity any comparator who was in the exact same situation as plaintiff but was received more favorable treatment); *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (affirming summary judgment on retaliation claim where plaintiff failed to sufficiently distinguish disciplinary record of plaintiff from comparators); *Beason v. S.C. Elec. & Gas. Co.*, Civil Action No. 0:13–3008–MGL, 2015 WL 545334, at *8 (D.S.C. Feb. 10, 2015) (granting summary judgment on retaliation claim where comparator, *inter alia*, did not have the same supervisor as plaintiff).

## VII.

In sum, (i) plaintiff cannot establish a *prima facie* case of ADA discrimination as he was not disabled within the meaning of the ADA; (ii) plaintiff cannot not establish a *prima facie* case of ADA retaliation as he failed to show that a causal connection exists between his protected activity and his termination; (iii) plaintiff cannot establish a *prima facie* case of FMLA retaliation as plaintiff did not have a serious health condition under the FMLA; and (iv) even if plaintiff could establish a *prima facie* case of each of these claims, defendant offered a legitimate nondiscriminatory reason for his discharge which plaintiff failed to show was pretextual. Accordingly, defendant's motion for summary judgment must be granted. An appropriate Order will issue.

Alexandria, Virginia
June 17, 2015

/s/
T. S. Ellis, III
United States District Judge